UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES J. SCHULZ, | ) | CIV. 13-5011-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff Charles Schulz appeals from a decision by the Acting

Commissioner ("Commissioner") denying plaintiff's application for social

security disability insurance and supplemental security income, as well as

other associated benefits.  (Docket 1).  Mr. Schulz seeks an order awarding

benefits, or in the alternative, remanding his case for a new hearing.

(Docket 14).  The Commissioner moves to affirm the decision of the

administrative law judge ("ALJ").  (Docket 16).

The parties acknowledge the court has jurisdiction pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  (Dockets 1 at

¶ 1; 9 at ¶ 1).  The court entered a briefing schedule requiring the parties to

file a joint statement of material facts ("JSMF").  (Docket 11).  The parties

filed their JSMF.  (Docket 13).

For the reasons stated below, plaintiff's motion is granted in part and denied in part and defendant's motion is denied.

## FACTUAL AND PROCEDURAL HISTORY

The parties JSMF (Docket 13) is incorporated by reference.  Further recitation of salient facts is included in the discussion section of this order.

On February 1, 2010, Mr. Schulz filed an application for disability insurance benefits asserting an onset of disability date of November 15, 2009.  Id. at ¶ 3.  On December 13, 2011, the ALJ issued a decision finding Mr. Schulz was not disabled.  (Administrative Record at pp. 11-20, hereinafter "AR, p. ___"; see also Docket 13 at ¶ 12).  On December 5, 2012, the Appeals Council denied Mr. Schulz's review request.  (Docket 13 at ¶ 12).  The ALJ's decision of December 13, 2011, constitutes the final decision of the Commissioner of the Social Security Administration.  (AR, p. 1).  Mr. Schulz timely appeals from that decision.

The issue before the court is whether the ALJ's decision of December 13, 2011, that Mr. Schulz "has not been under a disability . . . from November 15, 2009, . . . through [December 13, 2011] . . ." is supported by substantial evidence on the record as a whole.  (AR, p. 20).  See also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by

2

substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is

3

based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "  Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).  Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.  See Smith, 982 F.2d at 311.

## DISCUSSION

Plaintiff challenges the ALJ's decision on a number of grounds. Plaintiff claims the ALJ failed to:

1.   Properly develop the record;

2.   Make proper credibility determinations;

3.   Make a proper residual functional capacity determination; and

4.   Make a proper step four determination.

(Docket 15 at pp. 20-21).  Because of the court's analysis and conclusions regarding issues 1 and 2, the other issues are not addressed.

## 1.   THE ALJ FAILED TO PROPERLY DEVELOP THE RECORD

Plaintiff objects to the failure of the ALJ to adequately develop the record.  (Dockets 15 at pp. 21-22 & 25; 18 at pp. 2-3 & 7).  Plaintiff argues "[t]he ALJ's failure to develop the record was prejudicial because it infected his credibility and [residual functional capacity ["RFC"] findings . . . and

4

ultimately the decision against the claimant." (Docket 15 at p. 21).  Plaintiff challenges the ALJ's development of the record in two principal areas: (1) failing to obtain the medical records of Dr. Wayne Anderson; and (2) failing to obtain the records of the South Dakota Retirement System ("SDRS"), which found Mr. Schulz disabled.  (Docket 15 at pp. 21 & 25).

"The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings. . . . Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." Sims v. Apfel, 530 U.S. 103, 110-11 (2000).  "The regulations make this nature of SSA proceedings quite clear.  They expressly provide that the SSA 'conduct[s] the administrative review process in an informal, nonadversary manner.' " Id. at p. 111 (citing 20 CFR § 404.900(b)).  "The regulations further make clear that the [Appeals] Council will 'evaluate the entire record,' including 'new and material evidence,' in determining whether to grant review." Id. (citing 20 CFR § 404.970(b)).

"[S]ocial security hearings are non-adversarial. . . . the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004).  "The ALJ possesses no interest in denying benefits and

must act neutrally in developing the record." Id. (referencing Richardson v. Perales, 402 U.S. 389, 410 (1971) ("The social security hearing examiner, furthermore, does not act as counsel.  He acts as an examiner charged with developing the facts.") (other reference omitted).  "[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008).

During the administrative hearing, the ALJ and Mr. Schulz discussed other documentation which may exist.  When Mr. Schulz indicated having seen Rick Ostrander, a vocational disability expert, but not having his report for the hearing, the ALJ responded "[w]ell the law is not self-effectuating so . . . if you want I'll hold the record open if you want to submit it. . . . Let me put it another way.  I'm not going to chase around looking for your records.  If you give me a list of where they are I will get them or you can get them, it'll take me a while to get them because I've got to go through the state of South Dakota's [Disability Determination Services] to get them." (Docket 13 at ¶ 29).  Because of that statement, Mr. Schulz volunteered that he would "be more than happy to get them for you." Id.

6

The ALJ then announced he would hold the record open for ten days, but after that he was leaving for Christmas vacation and wanted to have a decision entered before the end of the year.[1]  Id. at ¶ 30.

<u>Dr. Wayne Anderson Records</u>

Mr. Ostrander's vocational evaluation of Mr. Schulz resulted in a written report dated October 27, 2010.  Id. at ¶ 127.  Mr. Ostrander's report referenced the medical reports and opinions of Drs. Watt, Lawlor and the findings of Dr. Wayne Anderson of March 31, 2010.  Id. at ¶¶ 130 & 131.  Dr. Anderson concluded Mr. Schulz's diagnosis included "chronic low back pain with disc herniation at L5-S1, cervical pain, and left upper extremity radicular symptoms . . . ."  Id.  After receiving the vocational evaluation of Mr. Ostrander, the ALJ did not make a request for Dr. Anderson's medical records.

The Commissioner argues Dr. Anderson's records would have been repetitive, because "similar reports were contained in the record (*see, e.g.*, JSMF ¶112-14 (January 2010 EMG showing 'chronic bilateral L5 radiculopathy'), JSMF ¶114 (December 2009 lumbar MRI showing herniation at L5-S1), JSMF ¶116 (Schulz reported '50 percent' of his pain was in his lumbar spine))."  (Docket 17 at p. 6)  Furthermore, the

---

[1] It would appear the ALJ's urgency to issue a decision was prompted in part by Mr. Schulz writing to his Senator's office seeking assistance in getting his disability claim processed.  (Docket 13 at ¶ 10).

Commissioner argues the ALJ considered Mr. Ostrander's report and plaintiff "fails to identify how the lack of this cumulative report prejudiced his claim." Id.  The Commissioner's argument is a less than candid acknowledgment of the record.

One of Mr. Schulz's treating physicians, Dr. Watt, reported an EMG provided electrophysiologic evidence of chronic bilateral L5 radiculopathy. (Docket 13 at ¶ 114).  A lumbar MRI confirmed an L4-L5 disc herniation without nerve root compression and a larger left L5-S1 herniated disc with a floating fragment compressing the S1 nerve root.  Id. at ¶ 103.  These studies are objective evidence of low back pain.  As Mr. Schulz's pain management physician, Dr. Lawlor reported Mr. Schulz suffered low back and leg pain.  Id. at ¶ 118.

Left arm radicular symptoms observed by Dr. Anderson are neither low back nor leg conditions.  Dr. Anderson's records focusing on Mr. Schulz's mid-back and arm pain issues are not duplicative of the reports of the treating physicians.  Left arm pain is consistent with Mr. Schulz's testimony that he had pain in his low back and between his shoulder blades, which hurt "24/7, all the time. . . a constant, constant pain and then depending on what I do I can get like a really sharp, piercing pain." Id. at ¶ 17.  Mr. Schultz testified the pain between his shoulder blades was on and off and not dependant on any activity.  Id.   Mr. Schulz stated his mid-

8

back hurt about 45 percent of the time.  Id. at ¶ 18.  Arm pain also is consistent with Mrs. Schulz's observations that her husband suffered arm spasms and did not cook because arm spasms caused him to drop hot items or food.  Id. at ¶¶ 84 & 85.

The absence of Dr. Anderson's medical records and report from the administrative record is not harmless.  Whether Dr. Anderson's opinions support Mr. Schulz's treating physicians, identify a separate impingement issue, or support Mr. and Mrs. Schulz's credibility cannot be determined on the present record.  "Because this evidence might have altered the outcome of the disability determination, the ALJ's failure to elicit it prejudiced [claimant] in his pursuit of benefits."  Snead, 360 F.3d at 839 (referencing Shannon, 54 F.3d at 488 ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.").

South Dakota Retirement System

During the administrative hearing, Mr. Schulz testified he had been accepted for disability benefits by the SDRS but was turned down by Rehabilitation Services.  (Docket 13 at ¶ 28).  The award letter from the SDRS of April 21, 2011, is part of the administrative record.  (AR, p. 221).  The documentation supporting the SDRS disability determination is not part of the administrative record.

The Commissioner argues plaintiff "does not identify any evidence that the ALJ ignored or discounted evidence underlying the South Dakota Retirement System's finding."  (Docket 17 at p. 11).  The Commissioner argues plaintiff "cannot establish that the ALJ failed to consider the underlying evidence."  Id.

The Commissioner's argument ignores the very nature of the ALJ's obligation in this disability proceeding.  During the administrative hearing, the ALJ learned Mr. Schulz was awarded SDRS disability benefits.  (Docket 13 at ¶¶ 28 & 134).  The ALJ is bound to consider the disability determination made by the SDRS.  20 CFR § 404.1512(5) ("evidence" includes the "[d]ecisions by any governmental . . . agency about whether [the claimant is] disabled . . . .").  See also Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998) ("[T]he ALJ should have addressed the determination by the VA that [claimant] is permanently and totally disabled.  It is true that the ALJ does not have to discuss every piece of evidence presented. . . . It is also true that a disability determination by the VA is not binding on an ALJ considering a Social Security applicant's claim for disability benefits. . . . We think, however, that the VA finding was important enough to deserve explicit attention.") (internal citations and quotation marks omitted) (emphasis added).

When the ALJ learned the SDRS disability benefits information was not part of the record, he was obligated to obtain those records.  Snead, 360 F.3d at 838.  "[T]he ALJ neglected [his] duty to resolve the ambiguity in [the record] through further inquiry."  Coleman v. Astrue, 498 F.3d 767, 771 (8th Cir. 2007).  The ALJ's failure to develop the record is both unfair and prejudicial.

The court would remand on this issue alone, but because of the significance of the plaintiff's credibility challenge, the court will address plaintiff's objections on this issue.

## 2.   THE ALJ FAILED TO MAKE PROPER CREDIBILITY DETERMINATIONS

Dr. Brett Lawlor

Dr. Lawlor is a board-certified physiatrist.[2]  (Docket 13 at ¶ 112).   On January 21, 2010, Dr. Lawlor examined Mr. Schulz and had an EMG study done for bilateral leg pain and weakness.  Id.  The EMG disclosed there was "electrophysiologic evidence of a chronic bilateral L-5 radiculopathies."  Id.  Dr. Lawlor recommended "physical therapy to include ultrasound, mobilization, stabilization, and modalities for pain control to treat his discogenic pain and radicular pain."  (AR, pp. 296 & 302).  Gabapentin

---

[2]A physiatrist is a physician who specializes in physical medicine and rehabilitation with the goal of restoring optimal function in patients with injuries to bones, tissues and muscles.  MedicineNet.com.

(Neurotin) 50 mg. was prescribed.  (AR, p. 296).  Mr. Schulz was also encouraged to use Lidoderm patches and to continue use of an anti-inflammatory medication.  Id.

When he returned to see Dr. Lawlor on April 22, 2010, Mr. Schulz reported he had attended physical therapy but did not find it particularly helpful.[3]  (Docket 13 at ¶ 118).  Dr. Lawlor increased Gabapentin to 300 mg. per day on a progressive dosage regimen.  Id.  Dr. Lawlor placed Mr. Schulz on a 20-pound maximum lifting restriction and indicated "[h]e needs to limit bending and twisting to occasional, change positions from sitting to standing and walking every 30 minutes as necessary."  (Docket 13 at ¶ 118).

Mr. Schulz was seen by Dr. Lawlor again on March 10, 2011.  Dr. Lawlor reported Mr. Schulz had no change in his condition, continued to have daily pain, and was taking Ibuprofen.  Id. at ¶ 119.  Dr. Lawlor put in "essentially the same restrictions that I put him on in April [2010] which is a maximum lift of 20 pounds, changing positions from sitting to standing to walking every 30 minutes as necessary, and a maximum sitting of 2 1/2 hours in an 8 hour day."  (AR, p. 306).

The ALJ gave Dr. Lawlor's medical opinions "substantial weight . . . due to his treating status and because his opinions are generally consistent with the evidence of record . . . ."  (AR, p. 18).  The Commissioner

---

[3]The court notes there are no physical therapy documents in the record.

acknowledged substantial weight was "given to Dr. Lawlor's opinion that the claimant was capable of work involving a lift restriction of 20 pounds, occasional bending and twisting, and change of position from sitting to standing and walking every 30 minutes as necessary, and that Schulz could sit a maximum of two and one-half hours in an eight-hour day." (Docket 13 at ¶ 59). The ALJ "accorded less weight to Dr. Lawlor's opinion that the claimant requires a change of position every 30 minutes and is only able to sit 2 1/2 hours because this opinion is not supported by the record. []In fact, the record does not identify any specific reason as to why the claimant is able to only sit for 2 1/2 hours and/or would need to change positions." Id. at ¶ 60. The ALJ's justification for giving this opinion of Dr. Lawlor less weight is because "[a]lthough the claimant indicated that he agreed with these limitation[s] due to leg spasms, the undersigned notes at the hearing that the claimant testified that in order to alleviate the spasms, he only need[ed] to massage the area to 'work' it out." Id. The ALJ found Dr. Lawlor's "restriction is not warranted based on the claimant's statements and a review of the evidence of record as a whole." (AR, p. 18).

Plaintiff objects to giving less weight to the opinion of Dr. Lawlor because "[t]he ALJ failed to identify an inconsistency that detracted from the treating specialist's opinion, or a better competing opinion, and there was none." (Docket 15 at p. 23). Plaintiff argues the medical evidence

13

supported Dr. Lawlor's restrictions and "it appears that the ALJ impermissibly substituted his own opinion for the opinion of the treating specialist." Id. at p. 24.

At the hearing, Mr. Schulz did not testify massage was successful in relieving the painful leg cramps he experienced.  The transcript of the hearing discloses the following exchange:

Q.     Do you have any other difficulties from, of a medical nature?

A.     A lot - - the relation with - - because of the nerves that are also injured in that area I get the, the spasms in my legs, I get awful, awful painful leg cramps and loss of strength at times.

Q.     How often do you have the cramping?

A.     Every couple of days.

Q.     What do you do to remedy that?

A.     I just try to walk out, you try to massage it and try to work it out.

(AR, pp. 34-35).  The ALJ asked no further questions to determine if self-massage was successful in working out the painful leg cramps.

Rather than adopt Dr. Lawlor's treating physician opinion of April 2011, the ALJ chose to accept the RFC recommendations of Dr. Kevin Whittle.  (AR, p. 19).   Dr. Whittle, a non-examining consultant physician, reviewed the record and issued a report on November 20, 2010.  (Docket 13 at ¶ 122).  Dr. Whittle did not complete a physical RFC assessment form, but rather bootstrapped his opinion to the RFC assessment form completed

14

by another non-examining consultant, Dr. Terry.  See AR, pp. 228-35 &
251.  Dr. Terry's evaluation of March 29, 2010, occurred between Dr.
Lawlor's January and April 2010 examinations of Mr. Schulz.  Dr. Whittle's
record review was conducted before Dr. Lawlor's modified and more
restrictive directive of April 2011.

Neither Dr. Terry nor Dr. Whittle had access to the complete record.[4]
"[T]he opinion of a nonexamining consulting physician is afforded less
weight if the consulting physician did not have access to relevant medical
records, including relevant medical records made after the date of
evaluation."  McCoy v. Astrue, 648 F.3d 605, 616 (8th Cir. 2011)
(referencing Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) ("The
regulations . . . provide that, when evaluating a nonexamining source's
opinion, the ALJ 'evaluate[s] the degree to which these opinions consider all
of the pertinent evidence in [the] claim, including opinions of treating and
other examining sources.' ") (referencing 20 CFR §§ 404.1527(d)(3) & (f)).
The non-treating physicians' assessments "cannot be considered substantial
evidence in the face of the conflicting assessments of a treating physician."

---

[4]The ALJ wrote he was adopting the opinion of Dr. Stephanie Fuller, giving
the appearance that her opinion, like Dr. Whittle's opinion, was contrary to Dr.
Lawlor's opinions.  (AR, p. 19).  Dr. Fuller is a Ph.D. psychologist and not a
physician.  Her opinions were limited to Mr. Schulz's mental status.  (AR, p.
250).  Dr. Fuller adopted the psychiatric review technique form completed by
psychologist Dr. Jerry Buchkoski dated April 8, 2010.  See AR, pp. 236-49.

Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999).  It was error for the ALJ
to give weight to the statements of either Dr. Terry or Dr. Whittle knowing
neither of these non-examining sources had access to all the relevant
medical records.

The ALJ questioned Dr. Lawlor's opinion because "the record does not
identify any specific reason as to why the claimant is able to only sit for 2
1/2 hours and/or would need to change positions."  (AR, p. 18).  Dr. Lawlor
had the benefit of the following information which is in the record:

1.    Examination by Dr. Watt:

      a.    January 26, 2004:

            1.    Mr. Schulz "had received two epidural steroid
                  injections and had undergone physical therapy [but
                  felt they] provided no relief."  (Docket 13 at ¶ 105);

            2.    . . . "traumatic discogenic pain."  Id.;

            3.    Recommended two level fusion at L4-5 and L5-S1.
                  Id. at ¶ 106;

2.    MRIs:

      a.    2002: "L4-L5 central disc herniation without clear
            nerve-root compression, and a larger left L5-S1 herniated
            disc with a free fragment compressing the S1 nerve root."
            Id. at ¶ 103;

      b.    2003: "confirmed the left-side L5-S1 disc herniation with
            free fragment."  Id. at ¶ 104.

      c.    2009: "focal herniated disk identified at the L5-S1 level
            which is a midline disk and slightly effaces both the right
            and left Sl nerve roots.  Mild protrusion of disk

16

symmetrically is seen at the L4-L5 interspace without any significant spinal stenosis." <u>Id.</u> at ¶ 100;

3.     Discography of 2004: "concordant 5/10 pain at L4-5 and concordant 10/10 pain at L5-Sl." <u>Id.</u> at ¶ 105;

4.     EMG in 2009: "electrophysiologic evidence of chronic bilateral LS radiculopathy." <u>Id.</u> at ¶ 114; and

5.     Examinations by Dr. Lawlor:

    a.     January 21, 2010:

        1.     "50 percent of his pain was in his back, 50 percent was leg pain.  Pain was unrelated to time of day.  He reported throbbing pain throughout the midline lumbar spine and bilateral posterior thighs, level 9/10 now, 7/10 at best, and 10/10 at worst.  All movements increased pain." <u>Id.</u> at ¶ 116;

        2.     "Lumbar spine range of motion: Limited throughout, and he has some discomfort throughout."  (AR, p. 295);

        3.     "Inspection of the spine: He has sacral torsion.  The right ilium is anterior.  The right leg is shorter due to this." <u>Id.</u>;

        4.     "Provocative maneuvers: Lumbar spine: Right fabere caused midline lumbar spine pain.  Prone extension did not change his pain.  Reverse straight leg raise increased midline spine pain." <u>Id.</u>;

        5.     "Straight leg raising: Straight leg raise caused midline spine pain." <u>Id.</u>;

        6.     "Palpation: He is tender to palpation in the L5 spinous process and the right gluteal muscles." <u>Id.</u>;

        7.     "Diagnoses: . . . L5-S1 disc protrusion . . . Old L5 radiculopathy . . . Back pain and radicular pain." <u>Id.</u> at p. 296.

    b.    April 22, 2010:

        1.    On examination "he has focal midline tenderness. He has bilateral buttock tenderness. Straight leg raising causes back pain, but no leg pain." (AR, p. 310);

        2.    Diagnosis: "back pain and radicular pain . . . Disc protrusion at L5-S1" Id.

        3.    "He continued to have back and leg pain. He had been in physical therapy but did not find it particularly helpful. He had started Gabapentin and found it somewhat helpful so Dr. Lawlor recommended he increase the dose from 300 mg. twice a day to three times a day." (Docket 13 at ¶ 118); and

    c.    March 10, 2011: "He has had no change in his medical condition. He continues to have daily pain. He takes Ibuprofen for his pain." (AR, p. 309).

The ALJ "may not draw upon his own inferences from medical reports." Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003) (quoting Lund v. Weinberger, 520 F.2d 782, 785 (8th Cir. 1975). "[T]he ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole." Finch v. Astrue, 547 F.3d 933, 938 (8th Cir. 2008). There are two recognized requirements to this general rule:

[A]n ALJ's decision to discount or even disregard the opinion of a treating physician [may be upheld] (1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.

Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (internal citation omitted).  "A treating physician's opinion is given controlling weight 'if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.' " House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (quoting Reed, 399 F.3d at 920).  See also Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009).

The ALJ's rejection of Dr. Lawlor's opinion is not supported by the record.   Contrary to the ALJ's decision, there is substantial medical evidence to support Dr. Lawlor's opinion.  Dr. Lawlor's opinions are entitled to controlling weight.  House, supra; Medhaug, supra.

Lynnette Schulz

Mr. Schulz's wife, Lynnette, completed a third party function report. (AR, pp. 206-13; see also Docket 13 at ¶¶ 82-91).  The AlJ found:

> Ms. Schulz's statements in the report do not establish that the claimant is disabled since Ms. Shulz is not medically trained to make exacting observations as to the dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms. Moreover, by virtue of her relationship as the claimant's wife, Ms. Schulz cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to her statements because they, like the claimant's testimony, is simply not consistent with the evidence of record in the case.

(AR, pp. 17-18).

Mr. Schulz objects to the ALJ's summary dismissal of his wife's lay witness report.  (Docket 15 at p. 30).  He argues it is an abuse of reason to conclude as a matter of law that a lay witness is not credible because she is not medically trained.  Id.  Mr. Schulz argues "[a] lay witness, by definition, is not medically trained. . . . The ALJ's disqualification of Schulz's spouse as a witness was legal error."  Id. at pp. 30-31.  The Commissioner did not respond to plaintiff's argument.  See Docket 17.

The ALJ has a legal duty to consider lay witness testimony.  The Social Security Regulations specifically address the use of non-medical sources of information.  Those include "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy)."  20 CFR § 404.1513(d)(4).  The regulations acknowledge subjective pain is "difficult to quantify . . . [so] symptom-related functional restrictions and limitations which . . . other persons report, which can reasonably be accepted as consistent with the objective medical evidence . . . will be taken into account."  20 CFR § 404.1529(c)(3).

The United States Court of Appeals for the Eighth Circuit made it clear lay person statements must be considered by an ALJ when evaluating a claimant's subjective pain complaints.  Willcockson v. Astrue, 540 F.3d 878, 880-81 (8th Cir. 2008) (referencing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).  The ALJ is required to " 'carefully consider' evidence

from other persons addressing the extent of the claimant's pain and how it affects his . . . ability to function." Id. at p. 881 (referencing 20 CFR § 404.1529(c)(3)).   Subjective complaints are difficult to document and family members "may be the only ones who witness a claimant's difficulties . . . ." Id.  The Eighth Circuit instructed "the ALJ is of course not required to accept all lay testimony, we think that it is almost certainly error simply to ignore it altogether." Id.

It is important for the ALJ to learn whether the claimant is capable of performing household chores, "such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking . . ." as these activities would be "inconsistent with subjective complaints of disabling pain." Medhaug, 578 F.3d at 817.  On the other hand, a lay person's report the claimant is no longer capable of performing these household chores would be evidence of disabling pain.  Willcockson, supra; Medhaug, supra. The inability to perform acts which are consistent with complaints of disabling pain reflects positively on the complaint's credibility.  See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.").

Lynette Schulz gave a detailed description of her observations which need not be repeated here.  See Docket 13 at ¶¶ 82-91.  Her report disclosed

21

not only how her husband's pain affected his life, but her life as well. The court finds it is error for the ALJ simply to dismiss Mrs. Schulz's report as the product of a sympathetic wife and then summarily reject her testimony as inconsistent with the remainder of the record.

**3.    REMAND OR AWARD BENEFITS**

Mr. Schulz opposed remand and asks the court to award benefits. (Docket 14). The court may affirm, modify, or reverse the Commissioner's decision, with or without remand to the Commissioner for a rehearing. 42 U.S.C.§ 405(g). If the court determines that the "record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which the plaintiff is entitled, reversal is appropriate." Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992).

The court finds the administrative record is not yet complete. Because the court concluded the ALJ erred as a matter of law in evaluating the opinions of Dr. Lawlor and the testimony of Mrs. Schulz, it is incumbent upon the ALJ, consistent with this order, to reevaluate the testimony and credibility of Mr. Schulz. The ALJ then must determine Mr. Schulz's RFC consistent with the abilities and limitations reflected in Dr. Lawlor's assessment and, through testimony of a vocational expert, establish whether Mr. Schulz is employable in the national economy. For these reasons a reversal of the ALJ's decision and remand to complete the record is appropriate.

## CONCLUSION

For the reasons stated above, the court finds the ALJ's decision of December 13, 2011, and the determination Mr. Schulz is not disabled is not supported by substantial evidence.  42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869 ("Substantial evidence is evidence that a reasonable mind would find adequate to support the decision of the Commissioner.").  As a result, the court finds the matter must be remanded for further proceedings consistent with this decision.

## ORDER

Based on the above discussion, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 14) is granted in part and denied in part.

IT IS FURTHER ORDERED that the Commissioner's motion to affirm the decision of the ALJ (Docket 16) is denied.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with this order.

Dated November 13, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

23